DAVID CHIU, State Bar #189542
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
EDMUND T. WANG, State Bar #278755
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3857
Facsimile:    (415) 554-3837
E-Mail:    edmund.wang@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HEARD,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO, SERGEANT DAMON JACKSON and DOES 1-50,<br><br>    Defendants. | Case No. 3:21-CV-09472-JSC<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date:    June 30, 2022<br>Hearing Judge:    Hon. Jacqueline Scott Corley<br>Time:    9:00 a.m.<br>Place:    Courtroom 8—19th Floor<br><br>First Am. Complaint Filed:    April 21, 2022<br>Trial Date:    Not Set |

Defs.' Mot. to Dismiss FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

n:\lit\li2022\220634\01598536.docx

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.      INTRODUCTION ...................................................................................................2

II.     PLAINTIFF'S ALLEGATIONS ..............................................................................3

      A.     Plaintiff Was Convicted of the Barrett Murder in State Court Based on the Eyewitness Testimony of Smith. .......................................................3

      B.     Sergeant Jackson Testified About the Video Evidence in the Barrett Case in a Later Federal Criminal Trial. ..........................................................5

      C.     Plaintiff Petitioned for a Writ of Habeas Corpus in State Court Based on Sergeant Jackson's Testimony in the Federal Criminal Trial. ....................6

      D.     Plaintiff's Causes of Actions Against Sergeant Jackson and the City .........7

III.    LEGAL STANDARD ..............................................................................................7

IV.    ARGUMENT AND AUTHORITY .........................................................................8

      A.     Plaintiff's Malicious Prosecution Claim Fails. ...........................................8

            1.     Plaintiff Fails to Allege Sergeant Jackson Caused His Prosecution. ......................................................................................8

            2.     Plaintiff's Allegations Establish Probable Cause for His Prosecution. ...................................................................................10

            3.     Plaintiff Fails to Allege Sergeant Jackson Prosecuted Him "With Malice." ...........................................................................11

      B.     Plaintiff's Withholding of Exculpatory Evidence (*Brady*) Claim Fails.....11

      C.     Plaintiff's Fabrication of Evidence (*Devereaux*) Claim Fails....................12

      D.     Plaintiff Fails to State Any § 1983 Claim Against the City Under a *Monell* Theory...........................................................................................13

V.     CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)................................................................................................7

*Awabdy v. City of Adelanto*
    368 F.3d 1062 (9th Cir. 2004) ...............................................................................9

*Bauer v. City of Pleasanton*
    2020 WL 1478328 (N.D. Cal. Mar. 26, 2020)......................................................15

*Beck v. City of Upland*
    527 F.3d 853 (9th Cir.2008) ................................................................................10

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)..........................................................................................7, 11

*Board of Comm'rs of Bryan Cnty. v. Brown*
    520 U.S. 397 (1997).............................................................................................15

*Bradford v. Scherschligt*
    803 F.3d 382 (9th Cir. 2015) ...............................................................................12

*Brady v. Maryland,*
    373 U.S. 83 (1963)..........................................................................2, 6, 7, 11, 12

*Bull v. City and Cty. of San Francisco*
    595 F.3d 964 (2010).............................................................................................14

*Cf. Bagley v. City of Sunnyvale*
    2017 WL 344998 (N.D. Cal. Jan. 24, 2017)....................................................13, 14

*City of Canton v. Harris*
    489 U.S. 378 (1989).............................................................................................15

*Cole v. Sunnyvale*
    2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ........................................................7, 9

*Compare Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*
    744 F.3d 595 (9th Cir. 2014) .................................................................................8

*Connick v. Thompson*
    563 U.S. 51 (2011)..............................................................................................14

*Conrad v. United States*
    447 F.3d 760 (9th Cir. 2006) .................................................................................8

*Cooley v. City of Walnut Creek*
    2018 WL 6330020 (N.D. Cal. Dec. 4, 2018).......................................................11

*Cornish v. Oakland Housing Auth.*
 2019 WL 1746070 (N.D. Cal. Apr. 18, 2019) ...................................................15

*Devereaux v. Abbey*
 263 F.3d 1070 (9th Cir. 2001) ...............................................1, 7, 12, 13, 14

*Galbraith v. Cty. of Santa Clara*
 307 F.3d 1119 (9th Cir. 2002) ...........................................................................9

*Garmon v. Cty. of Los Angeles*
 828 F.3d 837 (9th Cir. 2016) ..........................................................................14

*Giovanazzi v. Schuette*
 2009 WL 649187 (C.D. Cal. Mar. 10, 2009) ...................................................10

*McKenna v. WhisperText,*
 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ....................................................8

*McSherry v. City of Long Beach*
 584 F.3d 1129 (9th Cir.2009) .........................................................................10

*Menotti v. City of Seattle*
 409 F.3d 1113 (9th Cir. 2005) ........................................................................14

*Monell v. Dep't of Social Servs.*
 436 U.S. 658 (1978)........................................................3, 7, 13, 14, 15

*PAE Gov. Servs. Inc. v. MPRI, Inc.*
 514 F.3d 856 (9th Cir. 2007) ............................................................................8

*Ross v. City of Oakland*
 2015 WL 4365309 (N.D. Cal. July 14, 2015)..................................................11

*Smiddy v. Varney*
 665 F.2d 261 (9th Cir. 1981) ............................................................................9

*Smith v. Almada*
 640 F.3d 931 (9th Cir. 2011) ............................................................................9

*Stanislaus Food Prod. Co*
 782 F. Supp. 2d ................................................................................................8

*Sweiha v. Cty. of Alameda*
 2019 WL 4848227 (N.D. Cal. Oct. 1, 2019) ...................................................15

*Tavakoli v. City of Los Angeles*
 2019 WL 1297950 (C.D. Cal. Mar. 18, 2019)...........................................11, 12

*Tennison v. City & Cty. of San Francisco*
 570 F.3d 1078 (9th Cir. 2009) ........................................................................11

*Thompson v. City of Los Angeles*
   885 F.2d 1439 (9th Cir. 1989) ..............................................................14

*Trevino v. Gates*
   99 F.3d 911 (9th Cir. 1996) ..................................................................14

*Trulove v. City and Cty. of San Francisco*
   2016 WL 5930634 (N.D. Cal. Oct. 12, 2016) ........................................12

*Washington v. White*
   2018 WL 2287676 (N.D. Cal. May 18, 2018)....................................10, 11

*Yousefian v. City of Glendale*
   779 F.3d 1010 (9th Cir. 2015) ..............................................................14

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ..............................................1, 7

Federal Rules of Civil Procedure 11 ...........................................................8

**Federal Statutes**
42 U.S.C. § 1983...................................................................1, 7, 11, 13

**State Cases**
*Sheldon Appel Co. v. Albert & Oliker*
   47 Cal. 3d 863 (1989) .............................................................................8

**State Statutes & Codes**
Cal. Penal Code § 1473.............................................................................6

# NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that June 30, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard by District Judge Jacqueline Scott Corley in Courtroom 8, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendants City and County of San Francisco (the "City") and Sergeant Damon Jackson (collectively "Defendants") will and hereby do move for an order dismissing this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on the ground that the allegations in the complaint fails to state a claim upon which relief can be granted. Specifically, Plaintiff does not allege facts establishing a malicious prosecution claim under 42 U.S.C. § 1983 against Sergeant Jackson; a withholding exculpatory evidence (*Brady*) claim under 42 U.S.C. § 1983 against Sergeant Jackson; a fabrication of evidence (*Devereaux*) claim under 42 U.S.C. § 1983 against Sergeant Jackson; or municipal liability under 42 U.S.C. § 1983 against the City.

This motion is based on this Notice and Motion to Dismiss, the Memorandum of Points and Authorities, the pleadings and papers in this action, and such other argument or evidence that may be presented to the Court.

Dated:  May 5, 2022

> DAVID CHIU
> City Attorney
> MEREDITH B. OSBORN
> Chief Trial Deputy
> EDMUND T. WANG
> Deputy City Attorney
>
>
> By: *///s/// Edmund T. Wang*
> EDMUND T. WANG
>
> Attorneys for Defendant
> CITY AND COUNTY OF SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On November 25, 2008, Richard Barrett was shot twice in the back, killing him. An eyewitness, Francis Smith, identified Plaintiff Charles Heard as the shooter in a photo lineup on January 8, 2009. She also identified Plaintiff as the shooter at Plaintiff's preliminary hearing; and she did so again at Plaintiff's criminal trial. Plaintiff was convicted of the robbery and murder of Barrett.

There was also surveillance video of two individuals walking near the scene of the murder. Smith identified one of them as the shooter. Plaintiff alleges that in late December 2008 or early January 2009, members of the San Francisco Police Department ("SFPD") Gang Task Force, including Defendant Sergeant Damon Jackson, were called to a meeting at the district attorney's office to view the surveillance video. This is the sum total of Sergeant Jackson's (or any other investigator's) alleged involvement with Plaintiff's prosecution—attending one meeting at the district attorney's office where they discussed the individuals who they believed could have been in the video.

Plaintiff alleges that Sergeant Jackson, as opposed to any other investigator at the meeting at the district attorney's office, believed that the two individuals in the video were Dennis Anderson and Gregory Walker, and not Plaintiff. And according to the complaint, Plaintiff's state court conviction for the robbery and murder of Barrett was ultimately vacated on the purported grounds that Sergeant Jackson's belief about who was in the surveillance video was not disclosed to the criminal defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Plaintiff's allegations, however, fail to state a malicious prosecution claim, a withholding exculpatory evidence (*Brady*) claim, or a fabrication of evidence (*Devereax*) claim. Plaintiff fails to allege any wrongful conduct by Sergeant Jackson (or any other investigator). Rather, their only alleged involvement with Plaintiff's prosecution was discussing the identity of the individuals in the surveillance video *at and with* the district attorney's office. In other words, Plaintiff's FAC—far from stating a claim against Sergeant Jackson or any other investigator—suggests that Sergeant Jackson and the other investigators did *not* conceal or withhold the alleged exculpatory evidence from the district attorney's office, nor fabricated any evidence against Plaintiff. Having disclosed the alleged exculpatory evidence to the district attorney's office, Sergeant Jackson and any other investigator are

shielded from liability for Plaintiff's prosecution. Plaintiff's allegations also establish there was probable cause for his prosecution for the Barrett murder—an eyewitness, Smith, identified him as the shooter in a photo lineup and at his preliminary hearing. Plaintiff fails to state a claim against Sergeant Jackson or any other investigator.

Because Plaintiff fails to state an underlying claim for any constitutional violation against Sergeant Jackson (or any other investigator), Plaintiff also cannot state a claim against Defendant City and County of San Francisco (the "City") under *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978). But even if Plaintiff has alleged an underlying constitutional violation (he has not), Plaintiff's municipal liability claims would still fail because he fails to allege any such constitutional violations were caused by a longstanding and well-settled policy of the City. The Court should grant the City's motion to dismiss the complaint against Sergeant Jackson and the City.

## II.    PLAINTIFF'S ALLEGATIONS

### A.    Plaintiff Was Convicted of the Barrett Murder in State Court Based on the Eyewitness Testimony of Smith.

Plaintiff Charles Heard alleges that he was convicted of first-degree murder and attempted second-degree robbery of Richard Barrett in state court. ECF No. 26, FAC ¶ 18. On November 25, 2008, "two African American men" had "approached Barrett." *Id.* at ¶ 7. One of the men "had a gun," "pursued" Barrett when he ran away, and "shot Barrett twice in the back, killing him" on the "southeast corner of Broadway and Kearny Street in the North Beach area of San Francisco." *Id.*

According to the complaint, "[t]he prosecution's case" against Plaintiff "rested in large part on the eyewitness testimony of Francis Smith." *Id.* at ¶ 18. The eyewitness, Smith, was a tourist, visiting San Francisco from Texas, who was outside of the bar where Barrett was shot. *See id.* at ¶ 12. Plaintiff previously alleged that "[t]he shooter was standing next to [Smith], under a streetlight, waving a handgun in his left hand" and "Smith testified that she looked at the shooter's face and eyes and had a clear view of his face." ECF No. 1, Compl., ¶ 16. Plaintiff has now omitted that allegation; alleging instead only that she "had a fleeting glimpse of the shooter." ECF No. 26, FAC ¶ 12. "On January 8, 2009, six weeks after the shooting," Smith was shown a "photo lineup" at her home in Texas and "identified the Plaintiff." *Id.* Plaintiff alleges that Smith "felt 95 percent sure or 'pretty sure,' but she

would have felt 100 percent sure if the Plaintiff's mouth were open in the photo and she were to see gold on his teeth." *Id.* Plaintiff alleges that "[a]nother eyewitness, Duane Reeves," did "not identify him" but also "chose Plaintiff's photo from a lineup and told police he 'favored' or resembled' one of the two perpetrators." *Id.* at ¶ 15.

There was also "surveillance video footage of the two assailants." *Id.* at ¶ 14. Plaintiff alleges that Smith "viewed" the video and "identified one person as the shooter, contending she recognized his clothing but not his face." *Id.* According to the FAC, however, "Smith's description of the shooter to police had significant discrepancies from" the person she identified as the shooter in the surveillance footage. *Id.* at. ¶¶ 14, 15. Plaintiff alleges that Smith had told police that the shooter wore 'plaid and gray, white or black and white pants,' a plaid Kangol hat that matched his pants and a graffiti shirt with a short-sleeve overshirt." *Id.* at ¶ 14. Plaintiff alleges that "[a]t trial, Smith acknowledged that the videos showed the person she identified as the shooter wore a hoodie that was not short-sleeved, blue jeans, and no hat." *Id.* at ¶ 15.

According to Plaintiff, around the same time, "[i]n late December 2008 or early January 2009," Defendant San Francisco Police ("SFPD") Sergeant Jackson "and several other Western Addition Gang Task Force members had been called to the district attorney's office to view the video footage, which had recently been obtained in connection with the investigation of the Barrett homicide." *Id.* at ¶ 8. Plaintiff alleges that "[t]hese particular investigators were asked to participate because they were the ones who would be able to identify Western Addition suspects." *Id.* at ¶ 9. Plaintiff alleges that "[a]t that meeting in the district attorney's office," "the Gang Task Force investigators viewed the video footage of the two perpetrators on a computer monitor." *Id.* at ¶ 10. In his initial complaint, Plaintiff alleged that Sergeant Jackson testified that at that meeting at the district attorney's office, the Gang Task Force members had discussed "[t]he individuals who we believed it could have been [were] *between Charles Heard, Dennis Anderson and Gregory Walker*." ECF No. 1, Compl. ¶ 48 (emphasis added). Plaintiff has removed this allegation from his FAC. He now instead alleges only that "[t]he individuals who Detective Jackson believed it could have been in the video were Dennis Anderson and Gregory Walker." ECF No. 26, FAC ¶ 11.

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

4

n:\lit\li2022\220634\01598536.docx

Plaintiff alleges that Plaintiff was "arrested in June of 2009 and charged with the murder of Barrett." *Id.* at ¶ 13. Plaintiff alleges that eyewitness Smith "testified at the Plaintiff's preliminary hearing on October 8 and 9, 2009," where she "identified Plaintiff as the shooter." *Id.* at ¶ 13. At the preliminary hearing, Plaintiff had "opened his mouth and displayed gold crowns on his teeth, making Smith feel 100 percent sure that [Plaintiff] was the shooter." *Id.* Plaintiff further alleges that "at trial, Smith again identified Plaintiff as the shooter." *Id.* At trial, Smith also "acknowledged that the videos showed the person she identified as the shooter" was wearing different clothes from what she had told police. *Id.* at ¶ 15. Plaintiff alleges that his defense at the state criminal trial "repeatedly sought the trial court's permission to display photos of" Anderson and Walker because "[t]he defense maintained that Anderson and Walker had a much stronger resemblance to the perpetrators than Plaintiff. The defense also noted a recent interview of a police informant identifying Anderson as the shooter." *Id.* at ¶¶ 16, 17. According the FAC, "[t]he court found the evidence was inadmissible and excluded the photos of Anderson and Walker." *Id.* at ¶ 17.

The jury found "Plaintiff guilty of first-degree murder and attempted second-degree robbery" but "fail[ed] to return a verdict on the charge of possession of a firearm by a felon" and "found not true the allegation that Plaintiff personally and intentionally discharged a firearm." *Id.* at ¶ 18. Sergeant Jackson "did not testify in the state trial." *Id.* at ¶ 20.

### B. Sergeant Jackson Testified About the Video Evidence in the Barrett Case in a Later Federal Criminal Trial.

Plaintiff alleges that "[y]ears after his state conviction was upheld on appeal, Plaintiff was charged in a multi-defendant federal gang conspiracy case." *Id.* at ¶ 19. The "Barret murder" was "alleged as an 'overt act' in support of that conspiracy." *Id.* Plaintiff alleges that at the federal trial, Sergeant Jackson "was re-shown the same surveillance video of Barrett's two assailants that he viewed at the District Attorney's office in late 2008" and "testified that … they were *Dennis Anderson and Gregory Walker*, not the Plaintiff Charles Heard." *Id.* at ¶ 20 (original emphasis).

According to the FAC, Sergeant Jackson had "many years of experience as a police officer in the Western Addition and Fillmore neighborhoods and, later, as a member of SFPD's Gang Task Force focusing on the Western Addition and Fillmore gangs." *Id.* at ¶ 24. And Sergeant Jackson "ha[d]

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

5

n:\lit\li2022\220634\01598536.docx

known Plaintiff since 2006 or 2007 and had encountered him many times over the years in various areas of San Francisco, and that he saw Plaintiff and spoke with him on the street in consensual encounters and in the course of criminal investigations and arrests and had also viewed him many times in photos and video footage." *Id.* at ¶ 25. Plaintiff alleges that Sergeant Jackson is "equally familiar with Anderson and Walker. He had known them since around 2005 and had seen and spoken with them several times. He had seen the men in photos, in videos and encountered them on the streets for many years and acknowledged being 'very familiar' with all three men." *Id.* at ¶ 26.

### C. Plaintiff Petitioned for a Writ of Habeas Corpus in State Court Based on Sergeant Jackson's Testimony in the Federal Criminal Trial.

Plaintiff alleges that based on Sergeant Jackson's testimony at the federal trial, on November 20, 2018, "Plaintiff petitioned for a writ of habeas corpus, alleging that "new evidence established that Plaintiff was neither of the two perpetrators in the Barrett robbery and homicide, … and that his rights under *Brady v. Maryland* had been violated. *Id.* at ¶ 22. The *Brady* claim and the claim of new evidence pursuant to Cal. Penal Code § 1473(b)(3)(A) "were based on Defendant Jackson's federal trial testimony that the two perpetrators captured on the video surveillance footage were Walker and Anderson, not the Plaintiff." *Id.* at ¶ 23. Plaintiff alleges that at the state post-conviction hearing, Sergeant Jackson "was again shown the video surveillance footage of the two perpetrators" and "again testified that they were Walker and Anderson, not the Plaintiff." *Id.* at ¶ 27. Plaintiff alleges Sergeant Jackson "testified that he was 'confident and with 100 percent accuracy' that those people are who I've identified them to be." *Id.* at ¶ 28.

Plaintiff alleges that on March 13, 2022, the state court granted the writ of habeas corpus. *Id.* at ¶¶ 29-33. Plaintiff alleges that the court found Sergeant Jackson's "identification of Anderson and Walker to be 'very, very convincing and credible.'" *Id.* at ¶ 32. According to the FAC, the court "stated: 'This is a case where it was believed that the two men depicted in the video were responsible for the homicide. If a member of the Gang Task Force had a hundred percent belief that those two men were Walker and Anderson and not Heard, that's plainly material; it's plainly exculpatory.'" *Id.* at ¶ 30. Plaintiff alleges that the court granted the writ "[b]ased on the *Brady* violation." *Id.* at ¶ 33. According to the FAC, "[t]he prosecution elected not to retry Plaintiff for the Barrett murder." *Id.* at ¶ 53.

**D. Plaintiff's Causes of Actions Against Sergeant Jackson and the City.**

Based on the above allegations, Plaintiff asserts (1) a 42 U.S.C. § 1983 ("Section 1983") claim for malicious prosecution in violation of the Fourth Amendment against Sergeant Jackson; (2) a Section 1983 claim for withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and the Fourteenth Amendment against Sergeant Jackson; (3) a Section 1983 claim for fabrication of evidence under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) against Sergeant Jackson; and (4) all of the foregoing Section 1983 claims against Defendant City and County of San Francisco, apparently pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *See* ECF No. 26, FAC ¶¶ 34-70.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A complaint must do more than offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). "Where the facts, taken as true, are consistent with the possibility of wrongdoing, but where more likely explanations also arise from those same facts, the allegations do not 'plausibly suggest an entitlement to relief' and are appropriately subject to dismissal under Rule 12(b)(6)." *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *2 (N.D. Cal. Feb. 9, 2010) (citing *Iqbal*, 556 U.S. at 679).

And "when evaluating an amended complaint, '[t]he court may also consider the prior allegations as part of its "context-specific" inquiry based on its judicial experience and common sense

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

7

n:\lit\li2022\220634\01598536.docx

to assess whether' an amended complaint 'plausibly suggests an entitlement to relief.'" *McKenna v. WhisperText*, No. 5:14–cv–00424–PSG, 2015 WL 5264750, at * 3 (N.D. Cal. Sept. 9, 2015) (citing *Cole*, 2010 WL 532428 at *4). While "plaintiff permissibly may alter the challenged conduct in an amended complaint,"[1] the Court should "not ignore the prior allegations in determining the plausibility of the current pleadings," and may demand "more factual support" "in light of the prior allegations." *Stanislaus Food Prod. Co*, 782 F. Supp. 2d at 1076; *see also Cole*, 2010 WL 532428 at *5 (dismissing Third Amended Complaint upon "consideration of the facts alleged in the Third Amended Complaint" and "the facts alleged in prior iterations of the pleading").

## IV.   ARGUMENT AND AUTHORITY

### A.   Plaintiff's Malicious Prosecution Claim Fails.

Plaintiff's FAC fails to allege facts establishing any of the elements of a malicious prosecution claim against Sergeant Jackson. To establish a malicious prosecution claim under Section 1983, a plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989)). Here, Plaintiff fails to allege facts showing that Sergeant Jackson commenced or directed Plaintiff's prosecution; fails to allege facts showing that his prosecution was brought without probable cause; and fails to allege facts showing that Sergeant Jackson prosecuted Plaintiff with malice.

#### 1.   Plaintiff Fails to Allege Sergeant Jackson Caused His Prosecution.

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of*

---

[1] Ninth Circuit case law is inconsistent as to whether an amended pleading may contradict an original. *Compare Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") *with PAE Gov. Servs. Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.").

*Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (citing *Smiddy v. Varney*, 665 F.2d 261, 266-68 (9th Cir. 1981)). That said, a plaintiff "may maintain a malicious prosecution claim not only against prosecutors but also against others—including police officers and investigators—who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)). But a malicious prosecution claim can only be brought against police officers and investigators "who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067 (citing *Galbraith*, 307 F.3d at 1126-27).

Here, Plaintiff fails to allege any wrongful conduct by Sergeant Jackson, let alone wrongful conduct that was actively instrumental in causing the initiation of legal proceedings. Plaintiff alleges no facts showing Sergeant Jackson exerted any pressure on the prosecutor, or provided any misinformation to the prosecutor, or concealed exculpatory evidence from the prosecutor. Indeed, Plaintiff's allegations suggest the contrary—that Sergeant Jackson disclosed potentially exculpatory evidence to the district attorney's office, *i.e.*, that the two individuals in the surveillance video were Dennis Anderson and Gregory Walker. The only allegations connecting Sergeant Jackson to the investigation and prosecution of Plaintiff for the Barrett murder are that he was "called *to the district attorney's office*" to view the surveillance video with other investigators. Indeed, Plaintiff's prior complaint made clear that Sergeant Jackson and the other investigators at the meeting at the district attorney's office *discussed* that "[t]he individuals who we believed it could have been [were] between Charles Heard, *Dennis Anderson and Gregory Walker*." ECF No. 1, Compl. ¶ 48 (emphasis added); *see also Cole*, 2010 WL 532428 at *5 (dismissing Third Amended Complaint upon "consideration of the facts alleged in the Third Amended Complaint" and "the facts alleged in prior iterations of the pleading"). Even if the Court were to ignore Plaintiff's prior allegation, Plaintiff still fails to allege facts that establish a plausible claim that Sergeant Jackson or any other investigator concealed Sergeant Jackson's alleged belief that the two individuals in the video were Anderson and Walker; or otherwise concealed any exculpatory evidence, provided any misinformation to the district attorney's office, or exerted any pressure on the district attorney's office.

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

9

n:\lit\li2022\220634\01598536.docx

Plaintiff's allegations only establish that he *cannot* state a malicious prosecution claim against Sergeant Jackson. "A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff." *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir.2008). "Put in traditional tort terms, the prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1137 (9th Cir.2009) (quoting *Beck*, 527 F.3d at 862).While a plaintiff typically may not be required to rebut the presumption of prosecutorial independence in order to allege a claim for malicious prosecution, here, Plaintiff has affirmatively alleged facts that establish prosecutorial independence—that Sergeant Jackson and other investigators were called to the district attorney's office where it was disclosed that the two individuals in the surveillance video could have been Anderson and Walker. *See* ECF No. 26, FAC ¶ 8; ECF No. 1, Compl. ¶ 48. Having alleged facts that preclude liability against Sergeant Jackson, Plaintiff must plead around that bar to his claim. *See Giovanazzi v. Schuette*, No. 09-0496 AHM (PLAx), 2009 WL 649187, at *3 (C.D. Cal. Mar. 10, 2009) ("Plaintiff has an obligation to plead around absolute defenses disclosed on the face of the complaint and has failed to do so." (citation omitted)); *see also Washington v. White*, No. 18-cv-00333-WHO, 2018 WL 2287676, at *4-5 (N.D. Cal. May 18, 2018) (granting motion to dismiss malicious prosecution claim where the "allegations, on their face, are insufficient to overcome" the "presumption that a prosecutor exercises independent judgment in deciding to file charges"). Plaintiff has failed to do so.

### 2. Plaintiff's Allegations Establish Probable Cause for His Prosecution.

On the face of the complaint, there was probable cause for Plaintiff's prosecution. Plaintiff's malicious prosecution claim fails for this reason as well. According to Plaintiff's own allegations, Smith identified Plaintiff as the shooter in a photo lineup. ECF No. 26, ¶ 12. According to Plaintiff, Smith "felt 95 percent sure or 'pretty sure,' but she would have felt 100 percent sure if the Plaintiff's mouth were open in the photo and she were to see gold on his teeth." *Id.* Smith's identification was also corroborated by "[a]nother eyewitness, Duane Reeves" who also "chose Plaintiff's photo from a lineup and told police he 'favored' or 'resembled' one of the two perpetrators" (even if he allegedly

could "not identify him"). *Id.* at ¶ 15. Smith also "testified at the Plaintiff's preliminary hearing on October 8 and 9, 2009," where she "identified Plaintiff as the shooter" and "fe[lt] 100 percent sure that [Plaintiff] was the shooter" upon seeing his gold teeth. *Id.* at ¶ 13. These allegations establish probable cause for Plaintiff's prosecution. *See also Washington*, 2018 WL 2287676, at *4-5 (granting motion to dismiss malicious prosecution claim where "allegations, on their face, are insufficient to overcome" the presumption of probable cause resulting from "a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing"). The Court should dismiss Plaintiff's malicious prosecution claim on this independent ground as well.

### 3. Plaintiff Fails to Allege Sergeant Jackson Prosecuted Him "With Malice."

Plaintiff's malicious prosecution claim also fails because he fails to allege facts showing his prosecution for the Barrett murder was initiated with malice. Plaintiff's allegation that "Defendants acting with malice, caused the initiation of false charges to be filed against the Plaintiff" is conclusory and inadequate to state a claim. *See Cooley v. City of Walnut Creek*, No. 18-cv-00719-YGR, 2018 WL 6330020, at *7 (N.D. Cal. Dec. 4, 2018). Plaintiff alleges no specific facts to make it plausible that Sergeant Jackson, or any other officer, for that matter, acted for an improper purpose. In *Cooley*, the court rejected a similarly conclusory allegation, that the plaintiff was "prosecuted with malice," finding it inadequate to state a claim under *Twombly*. *Cooley*, 2018 WL 6330020, at *7. The Court should find the same here and grant Defendants' motion to dismiss.

### B. Plaintiff's Withholding of Exculpatory Evidence (*Brady*) Claim Fails.

"[I]n the Ninth Circuit, individual police officers may be held liable for their *Brady* violations under § 1983 if the officers act 'with deliberate indifference to or reckless disregard for an accused's rights or for the truth *in withholding evidence from prosecutors*." *Ross v. City of Oakland*, No. 14-cv-00800-MEJ, 2015 WL 4365309, at *11 (N.D. Cal. July 14, 2015) (emphasis added) (quoting *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009)). "[P]olice officers violate *Brady* if they 'withhold[] evidence *from prosecutors*." *Tavakoli v. City of Los Angeles*, No., 2019 WL 1297950, at *7 (C.D. Cal. Mar. 18, 2019) (original emphasis) (citing *Tennison*, 570 F.3d at 1088). "*Brady* does not require police officers to provide any evidence directly to the defense." *Id.*

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

n:\lit\li2022\220634\01598536.docx

Plaintiff's complaint fails to allege facts that plausibly suggest Sergeant Jackson withheld evidence from prosecutors. Rather, Plaintiff alleges that Sergeant Jackson viewed the surveillance video *with* the district attorney's office. Plaintiff alleges no facts to suggest Sergeant Jackson withheld any alleged belief that the two individuals in the video were Anderson and Walker from the district attorney's office. Plaintiff instead makes the conclusory assertion that the information was not disclosed to Plaintiff or his criminal defense attorney. But this is fails to allege a *Brady* claim against Sergeant Jackson or any other investigator as a matter of law. *See Tavakoli*, 2019 WL 1297950, at *7 ("*Brady* does not require police officers to provide any evidence directly to the defense.").

Indeed, considering Plaintiff's prior allegations, as the Court should, makes Plaintiff's *Brady* claim even less plausible. Plaintiff's initial complaint established that Sergeant Jackson actually *disclosed* the alleged exculpatory evidence at issue to the district attorney's office—meeting his obligations under *Brady*. Plaintiff alleged that at the meeting at the district attorney's office, Sergeant Jackson and other investigator discussed that "[t]he individuals who we believed it could have been" *included* "Dennis Anderson and Gregory Walker" (ECF No. 1, Compl. ¶ 48)—establishing that Sergeant Jackson and the other investigators did *not* withhold exculpatory evidence; according to Plaintiff's prior allegations, Sergeant Jackson and the other investigators disclosed to the district attorney's office that Sergeant Jackson believed the two individuals in the surveillance video were Anderson and Walker. This defeats Plaintiff's *Brady* claim. *Cf. Tavakoli*, 2019 WL 1297950, at *7 (granting summary judgment for officer on alleged *Brady* violation where officer disclosed the alleged exculpatory information to the district attorney). The Court should dismiss Plaintiff's *Brady* claim against Sergeant Jackson.

## C. Plaintiff's Fabrication of Evidence (*Devereaux*) Claim Fails.

"To state a plausible claim for deliberate fabrication of evidence under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), the plaintiff must: (1) identify the evidence alleged to have been fabricated; and (2) state facts to show that the fabrication was deliberate." *Trulove v. City and Cty. of San Francisco*, No. 16-050-YGR, 2016 WL 5930634, at *5 (N.D. Cal. Oct. 12, 2016) (citing *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015)). Deliberate fabrication can be shown directly, by alleging defendants reported information known to be false; or circumstantially, by

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

12

n:\lit\li2022\220634\01598536.docx

alleging a defendant either (a) continued his investigation even though he knew or should have known that he was innocent, or (b) used investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information. *Id.* (citations omitted).

Here, Plaintiff fails to identify what evidence was allegedly fabricated. Plaintiff alleges that Smith's identification of Plaintiff was mistaken; but there is no allegation it was fabricated. According to the complaint, Smith identified Plaintiff as the shooter in a photo lineup. ECF No. 26, FAC ¶ 12. And according to Plaintiff's own allegations, her identification was further corroborated by a second eyewitness who also "chose Plaintiff's photo from a lineup and told police he 'favored' or 'resembled' one of the two perpetrators." *Id.* at ¶ 15. Plaintiff alleges no facts to suggest the photo lineup was coercive or abusive in any way.

And even if the FAC could be construed to allege Smith's eyewitness testimony was fabricated, Plaintiff's claim against Sergeant Jackson still fails because he pleads no facts that show Sergeant Jackson had anything to do with the photo lineup shown to Smith, or any other effort to obtain information from Smith. Plaintiff does not allege Sergeant Jackson had any interaction with Smith at all. Sergeant Jackson's only alleged involvement with the Barrett homicide investigation is that they attended a meeting at the district attorney's office where he and several other investigators tried to identify the two individuals in the surveillance video. These allegations only suggest that Sergeant Jackson did *not* manipulate the evidence but actually disclosed potentially exculpatory evidence to the district attorney's office. Plaintiff alleges no facts connecting Sergeant Jackson (or any other investigator for that matter) to any alleged falsification of evidence. His fabrication of evidence claim thus fails. *Cf. Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *9 (N.D. Cal. Jan. 24, 2017) (dismissing *Devereaux* claim against an officer where plaintiff alleged no facts that actually connect the officer to the alleged falsifications).

### D. Plaintiff Fails to State Any § 1983 Claim Against the City Under a *Monell* Theory.

Plaintiff's *Brady* claim against the City for "withholding material exculpatory evidence" under a *Monell* theory (ECF No. 26, FAC ¶ 60) also fails. Under Section 1983, a municipality like the City cannot be liable for the acts of its employees under a respondeat superior theory. *Monell*, 436 U.S.

at 691. Rather, a plaintiff must prove that the alleged constitutional violation was the product of an official policy or custom of the municipality. *Id*. at 690-691. Plaintiff's allegations fail to meet the standard under *Monell* to support a § 1983 *Brady* claim against the City. As an initial matter, "municipalities cannot be held liable when the individual police officer has inflicted no constitutional injury." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015) (citations omitted). Accordingly, because Plaintiff fails to state a *Brady* claim against Sergeant Jackson or any other investigator as set forth above, his municipal liability claim also necessarily fails. *See, e.g.*, *Bagley*, 2017 WL 344998, at *9 (dismissing malicious prosecution claim and *Devereaux* claim against municipality where plaintiff inadequately alleged such claims against the only individual officer that was accused of constitutional violation in the complaint).

Even if Plaintiff has alleged an underlying *Brady* violation, "plaintiffs who seek to impose liability on local governments under Section 1983 must prove that action pursuant to official municipal policy caused their injury." *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 845 (9th Cir. 2016) (internal quotation marks omitted). *Monell* requires that the moving force behind the alleged constitutional violations be "a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). "[O]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989), overruled on other grounds in *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964 (2010). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Thompson*, 885 F.2d at 1443-44.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To establish such a claim, "a municipality's failure to train its employees in a

relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). And "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal quotation marks and citation omitted). Plaintiff must establish that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and "the policymakers choose to retain that program." *Id.* (citing *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) (emphasis added)). This requires that Plaintiff show "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62.

Plaintiff's allegations fall well short of alleging facts sufficient to allege a "permanent and well-settled" and "longstanding practice and custom," or a "pattern of similar constitutional violations" of withholding exculpatory evidence, as required to state a *Monell* claim. Plaintiff's only non-conclusory allegation in this regard is a bare reference to two other "[c]ases involving San Francisco Police Officers withholding exculpatory evidence in the last 12 years." ECF No. 26, FAC ¶ 69. This is insufficient. *See Bauer v. City of Pleasanton*, 3:19-cv-04593-LB, 2020 WL 1478328, at *5 (N.D. Cal. Mar. 26, 2020) (finding allegation that "two prior incidents also involving deaths of mentally ill persons" "show an unconstitutional policy" was "conclusory" and "do not show that the incidents are factually similar or plausibly show a 'persistent and widespread' custom (as opposed to 'isolated or sporadic' incidents)"); *Sweiha v. Cnty. of Alameda*, No. 19-cv-03098-LB, 2019 WL 4848227, at *4 (N.D. Cal. Oct. 1, 2019) (finding "five other incidents described in the complaint" failed to "show a 'custom [that is] so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'"); *Cornish v. Oakland Housing Auth.*, No. 18-cv-05947-LB, 2019 WL 1746070, at *5 (N.D. Cal. Apr. 18, 2019) (finding allegations about prior lawsuit for OHA officers targeting minorities in support of an alleged policy of harassing minorities "are not enough to plead that OHA should have been put on notice that different training was required"). The Court should dismiss all claims against the City.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiff

Charles Heard's First Amended Complaint against the City and Sergeant Jackson in its entirety.

Dated:  May 5, 2022

DAVID CHIU
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
EDMUND T. WANG
Deputy City Attorney


By: *////s//// Edmund T. Wang*
EDMUND T. WANG

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

Defs.' Mot. to Dismiss to FAC
Heard v. CCSF, et al., 3:21-CV-09472-JSC

16

n:\lit\li2022\220634\01598536.docx